Good morning, Your Honors. May it please the Court, Brianna Fuller on behalf of Appellant Raymond Ruiz. In this case, the government told the jury it could convict Mr. Ruiz so long as it found any one of three factual scenarios to be true. But because the government did not establish simultaneous possession of the firearm and ammunition, and because the facts of this case created a true risk of juror confusion in what turned out to be a very close case, a specific juror unanimity instruction was called for, and for that and other trial error, a new trial is appropriate. I plan to focus my arguments on the first of the four issues that's raised in our brief, which is the juror unanimity question. And on that question, it's important to reiterate that the government and appellant essentially agree as to what the test is, or essentially what the Court has to decide. And that is the unit of prosecution in a felon in possession case is that guns and ammunition simultaneously possessed should be counted as one offense, unless there's evidence of separate storage or separate acquisition. So with that taken for granted, the decision for this Court is whether the facts of this case, as they came out of trial, established one offense or three. Because of that, a crucial question, of course, is whether the evidence should be taken in the light most favorable to the government, or whether it should be treated the same as other jury instruction issues. We believe, and our position is that because the question is essentially whether Judge Phillips, at the time that, you know, had an objection been made, what the state of the evidence would have been at the time she was asked to give that instruction. It's not an issue that looks back from the verdict, but an issue that should take into account the state of the evidence at the time that Judge Phillips would have had to decide whether a jury instruction was appropriate. I'm sorry, I thought you were pausing for questions. Maybe I should just, generally a unanimous instruction isn't required here, unless there's possibility of juror confusion. That's correct, Your Honor. Now, this whole incident took place in a very short period of time, correct? It did take place over about a 10-minute period of time. So what was the possibility of any kind of juror confusion here? I think this case demonstrates the problem of when you expand from simultaneous possession to, if you relax the simultaneous. He was charged with possession of a weapon or ammunition. That's correct. Correct? That's correct. On a particular night, on a particular day and at a particular time, correct? That's correct. And you're right. This Court has focused on complexity and the issue of juror confusion. It's a pretty straightforward case, right? It is. But as Paisano and Aguiano say, the question of complexity and juror confusion isn't so much whether the case is complex in the subject matter. It doesn't have to be a complex fact here in this matter. Was it factually complex? It was in the sense that Paisano and Aguiano found important, which is that it involved different facts in different locations at different times with different witnesses and different evidence. And so that's been the focus of whether the facts are complex. And in that sense, the facts here are complex. We have three different incidents. Each of them involved different witnesses. They involved different evidence, different testimony. They were each independent, meaning that the jury's determination of one issue wouldn't necessarily impact its decision on the other issues. And for that reason, it is complex in the way that's important for the juror unanimity question. And that's why I think, you know, it's different than a true simultaneous possession case. For example, if there's two guns in one car or two guns in one house, those are the facts that have been decided in cases up to this point. In that case, the... The only charge came with possession of one gun, the shotgun, correct? That's correct, Your Honor. But of course, there were two different times where he was alleged to have some connection to that shotgun. When the Fuentes sister saw him at one point of the night, and when he was, according to his confession, or what we dispute as his confession, he was alleged to have it at... that he was going toward hiding it at the end of that night. I do want to highlight one other issue, and that is that, you know, this Court's Salskiewicz case, and I'm sorry if I'm not pronouncing that correctly, does provide insight into this issue. In that case, the government... There was essentially two charges for two guns that were found at one time. And the takeaway from Salskiewicz is that, while the government may have initial leeway in deciding how to charge a case, it has to act consistent with that election. So in that case, the government charged one transaction in two different counts. When the case came on appeal, this Court struck one of the counts, saying that while they could have charged it as two counts, they would have had to take on the burden of proving that there was separate acquisition or separate storage. There's another similar case out of the Seventh Circuit, the Buchmeier case, which says that if there are... whether it wants to treat three transactions as three different counts or as one count, but once it makes that election, it has to act consistent with that. It has to then prove a continuing course of conduct over those three. So are you suggesting that the government should have alleged three separate counts here? We are alleging that it should have alleged three counts here, Your Honor, because each of those was a separate act of possession. Or, like as this Buchmeier case... They seem to have told a story that it follows a continuous path. It does. Over a ten-minute period at a particular location at a particular time. It told one story, except that there was interruption in the actual possession of the rifle. That's undisputed on the testimony. Mr. Ruiz was seen with a rifle at one point, but then when he comes out of the house, he's not carrying the rifle. So it's clear that on the evidence there was a break in the actual possession. Which officer it is that enters after the spotlight? Yes, as Verbonik is the one who actually met him. And the shotgun is on the ground, not too far from him. At that point. And both the helicopter officer and the officer coming... I'm sorry, the helicopter officer said he didn't see him carrying anything, or he didn't see him reaching toward that gun. So it's clear that there was an interruption in the actual possession of the case. So although it was a story told over a relatively short period of time, there was a break in the actual possession. There's only alleged to be actual possession of the ammunition for a very brief period of time. The government didn't try to take on the burden of showing that there was some kind of possession that extended throughout the period of time. Didn't try to show that he knew where all these things were, that he had ownership of any of the items or anything like that. It proved a case as two acts of actual possession and a constructive possession theory based on the confession that said he was going to hide the gun. It could have taken on that extra burden, like the Boothmeyer case said, and tried to prove that there was a continuous course of conduct. But it didn't do that. And so for that reason, we would argue that there should have been a jury unanimity instruction. Any other issues you wish to add? I simply wanted to just kind of bring this issue to a close. The government didn't articulate the theory of why this error was not claimed. And given the fact that we agree on the law that applies and that that law is longstanding, we would suggest that the error is claimed. As far as harmlessness, we've described the issues in our brief. Their argument runs aground on the objective evidence in this case, which is that the jury deliberated for a day and a half on only three days' worth of testimony and requested multiple readbacks of that testimony. If I could, I'd like to reserve, unless there's questions about the other issues, I'll reserve the remainder of my time. Thank you. Mr. Tragerson? No. Okay. No questions. Okay. May it please the Court, Joseph Widman for the United States. The defendant received a fair trial before Judge Phillips in Riverside, and the government urges the Court not to disturb the conviction. I'm sorry, I'll speak up a little, Judge Tragerson. Well, I want to ask you some questions, if you don't mind. Of course. Mr. Widman, I have before me the call chart of Riverside, and I'm looking at item number 1116 in the record, and this is what it says. It says, way to find the defendant is number two. The defendant, she thought, was admiral in the vacant lot. Only way, not guilty, officers that lied to you. Now, you see, the way the court denied guilty is the jury has often been beyond a reasonable doubt that the defendant committed the acts in the realm of sexual and violence. Then the jury, the officer, is required to acquit the defendant. We don't instruct guilty. Say to them, the only way you can find the defendant not guilty is that the officer lied to you. And, first of all, I think, Mr. Widman, the defendant, is a resident of the state of Iowa, and we celebrate the founding of the state of Iowa. Now, tell me, tell me, tell me why the defendant did not forsake the law when it comes to doing the good of the government in reaching out to the government in a sense without a reasonable doubt. Your Honor? I appreciate your concerns, Judge Pragerson. The government, I, when I made that PowerPoint and presented it to the jury, was not purporting to articulate the burden of proof or trying to instruct the jury. But that's what you were doing. You were telling the jury that the only way you could find this person not guilty is if the officer lied to you. Your Honor? What was the objection made? Your Honor, if I may, that was an evidence-based argument. The evidence at trial directly contradicted each other with respect to the officer who is referenced in that PowerPoint slide. Under this Court's holding in United States v. Molina? You answered my question on burden of proof, which is essential and critical in our system of justice. You don't get up to a jury and argue the only way you can find someone not guilty is if the officer lies. Your Honor, the government, I was arguing the evidence, and I was arguing reasonable inferences from the evidence, which is permitted under this Court's case law. The statements of those witnesses were directly contradictory. The evidence that you have here is a false one. Now, you said that Officer Peck could have been mistaken. Officer Peck was in a helicopter at 500 feet above the scene of this incident, and he could have been mistaken. And then when they went down there, they found that it was blocked in the ammunition. There were no fingerprints taken from the box. There were no fingerprints taken from the ammunition. And the box was thrown away. But you described it. That's how important it was. Officer didn't drop off the box there. So, Officer Peck didn't have to find Officer Peck. If there's a liar, if there's a lie, then I don't know what it is. Your Honor, Officer Peck testified that he was completely certain that he saw the defendant throw that shoebox. That's fine. That's fine. But he couldn't have been mistaken. He's looking at a scene. It's 500 yards. It's 300 to 500 feet, Your Honor. It's 300 to 500 feet. You've got 300 feet at the length of a football field. So, that's the minimum. The maximum is 250 at the height of one and two-thirds of that feet. And, you know, we identified that this box was thrown at him because, you know, he couldn't have been mistaken. He couldn't have been mistaken. And that's precisely what defense counsel argued at length in his closing argument. Not about your argument. Not about the defense counsel's argument. You represent the United States of America, and you have to hold yourself to high standards. You know, you had a case here where you shouldn't have had any real problems. And, in this case, you made a great production out of it. And you got carried away. And I don't know how you came up with a proprietary argument about how you were the only way to find Mr. And then building with it. Two boxes. This one. This one. And that's why. We have to find an officer that's right. We've got to find an officer that, you know, was mistaken. If it was said no, you know, all that was correct. If all this was derived out of an officer's feasibility, then why did the police throw that box away? Tell me, did you answer that question for me? Why did they throw that piece of evidence away? Because it had already been inspected for fingerprints. There were no latent fingerprints found on it. And because it essentially contained no other apparent evidentiary value, it was discarded. Just like an old newspaper. Yeah. So, what if we do have evidence that we don't find? You know, here you see a box go over. And you come down there and you check it out. There's the box. There's the ammunition. You know, there's no fingerprints on the box. There's no fingerprints on the ammunition. But you say, well, officer said, well, you say there was a shoebox. Had a package thrown over. No, no fingerprints. Let's just throw it away. I mean, is that good investigative practice? Your Honor, the officer who made that decision. Well, answer my question. Is it good practice? Well, you know, I guess, certainly in retrospect, it's not. It's stupid. Now, if you're arguing about a box, and you don't even have the box, because he spoke, because the police threw it away. I mean, you know, come on. Yeah, I mean, certainly would have made things simpler if he had retained it. But, you know, in retrospect, he was cross-examined about it extensively, and the defense argued about it. I mean, it was made an issue, and the jury weighed that in its verdict. Well, it indicates to me the care with which this investigation was done. I mean, I couldn't believe that you have a box ready to shoot, and it's thrown away. I mean, it essentially was a reactive investigation to a 911 call on a Saturday night late in San Bernardino. The San Bernardino Police Department went out there, and they did inspect the shoebox, and they retained the ammunition, but not the shoebox. I would like to point out that... That's true, Your Honor. With respect to the issue of someone must be lying, these court cases in Molina and Nochia have addressed that. And if it's supported by the record, it's permitted to argue that. It's a fair argument. And also, at the end of the day, with respect to... It is somewhat misleading, though. Your Honor, I don't... Let me tell you something. You know, I've been on the bench a long time, and I remember arguments like that when I was on the municipal court. And they'd always say to me, Well, Greg, if you find this person not guilty, that means that the officer lied. And I'd tell them, no, that doesn't mean the officer lied. The officer's been mistaken. The evidence may not have reached the level that the state has got to come up with to reach an element of the offense beyond a reasonable doubt. You know, that's been embedded in our law for centuries. Your Honor, I always thought that was kind of a literal and insulting argument. Your Honor, in this case, we've already discussed Officer Peck. With respect to Officer Ludekaus, he said, I was sure that the defendant told me he was trying to hide that gun when the police arrived. When the defendant testified, he said, No, no way, I never said that. Officer Ludekaus, the defense's theory was, essentially, was making things up to try to get an easy arrest. There's no way to reconcile those two accounts, except that someone was not being designed. Well, except, is it a false example? Well, let me say this. First of all, here's what you have in this case. It's a felon in possession of a firearm. So it's a given. The jury knew right from the start that the person before him had been convicted of a felony. So the only other thing that you had to show was possession. And you got him in the backyard, face down, within an arm's length of the weapon. And there's all kinds of other evidence that you could use. But I just think that the defendant's theory, you know, if you find not guilty, then you're saying these police are all liars. Because we know the police always tell the truth. Your Honor, I didn't allege that you must find all the police officers are liars, and I didn't say, you know, everyone knows that police officers always tell the truth. Those things are not in the record. Let's put it that way. We've either got to believe that this person is in the docket, in the dockhole, with police. And to believe him, you've got to believe the police lie. And, Your Honor, with all... Why did you need an argument like that? The argument was supported by the record and permitted by... Were you afraid that you were going to lose this case? I wasn't afraid that we were going to lose the case, but I felt obligated to argue all of the reasonable inferences that are available for the record and permitted by this court's case law. And arguing that someone must be lying is both of those things in this case. Well, you tried it on, didn't I, as I'm concerned? And if I may make one final comment, I see my time is up. You can have the... I'll give you another minute or two here. Your Honors, with respect to all of these issues on the closing argument, the government urges the court to look at the wisdom of the Das case, which says that the court should not automatically assume that the prosecutor meant the worst, most damaging interpretation of what he or she said, or that the jury, sitting through a lengthy exhortation, I believe is the word the court used, will naturally take that meaning when there's a plethora of other meanings. And with respect to this argument about... When you use the word lie all throughout this argument, and you use these three beautiful PowerPoint items, how else is the jury going to take it? Your Honor, those arguments, as I pointed out, our position is that they were based on the facts. They were directly contradictory testimony. And argument that someone must be lying is permitted by Molina and Noccia. And on that particular point, I'm afraid there's not a whole lot else I can offer. Okay. All right. Thank you very much. Thank you. Thank you, Your Honor. Thank you. Any rebuttal? No, Your Honor.  United States v. Raymond Reese Jr. is submitted.
judges: Conlon, Pregerson, Paez